UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.  05-30097-MAP

CHARLES H. RICHARD,

Plaintiff

v.

ROCKY COAST, LLC.,

Defendant

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

## PROCEDURAL HISTORY

On or about April 20, 2005, the Plaintiff, Charles H. Richard (hereinafter referred to as the "Buyer") filed a contract action in Hampden Superior Court seeking, *inter alia,* specific performance of a contract for the sale of land located in Wilbraham, Massachusetts and Motions for Preliminary Injunctive Relief and for Issuance of a Lis Pendens.  The matter was scheduled for hearing with notice on April 27, 2005.  On April 26, 2005, the Defendant, Rocky Coast, LLC. (hereinafter referred to as the "Seller") filed a Notice of Removal in the U.S. District Court.

## LEGAL STANDARD

A party seeking a preliminary injunction must demonstrate: (1) a substantial likelihood of success on the merits; (2) a significant risk of irreparable harm if the injunction is not granted; (3) a favorable balance of hardships; and (4) a fit (or, at least, a lack of friction) between the injunction and the interest of the public.  *EEOC v. Astra USA, Inc.* 94 F.3d 738, 742 (1st Cir. 1996).

**FACTUAL BACKGROUND**

On February 17, 2005 the Buyer and Seller entered into a written Purchase & Sale Agreement which required the Seller to convey on or before March 11, 2005 property by means of a "good and sufficient Quitclaim Deed of the Seller, transferring good and clear, record and marketable title" for the sum of six hundred thirty thousand dollars ($630,000.00).  See ¶¶ 2 and 3 of Purchase & Sale Agreement attached to the Plaintiff's Complaint as Exhibit "A."  In the exercise of due diligence, the Buyer retained a title company to search the title and was informed of a cloud or defect in the title.

The existence of a title flaw was forwarded to and discussed with the Seller's attorney.  On or about March 15 and again on March 16, 2005, the Seller's attorney proposed corrective action to rectify the title flaw.  The proposed course of action called for obtaining a death certificate and a deed from the fiduciary of one of the estates involved.  See Exhibit "D" to Plaintiff's Complaint.  In a follow-up e-mail of March 16th, the Seller's attorney indicated a willingness to "search for information pertaining to the death of Ruby S. Baldwin and her marital status at the date of death and any possible probate in any other jurisdiction, and our communications with the Joseph V. Baldwin Fiduciary and/or his heirs."  See Exhibit "E" of Plaintiff's Complaint.  The Buyer was willing to accept the proposed corrective action contained in the above-referenced documents.  See ¶5 of Affidavit of Charles H. Richards.

On or about April 12, 2005 the Seller's attorney wrote to the Buyer's attorney indicating that title as it currently exists was "marketable in its present condition and status, and insurable by First American Title Insurance or others."  He went on to indicate an intention to sell to another party and no intention to take any corrective action as outlined in the correspondences of March 15th and 16th, 2005 or any other

reasonable corrective actions to rectify the flaw in the title.  See ¶7 of the Affidavit of Charles H. Richard.

The Buyer wishes to proceed with the sale as provided in the contract dated February 17, 2005.  The Buyer was and is ready, willing and able at all times to perform its obligation under the provisions of the contract.

## DISCUSSION

**I.    _Substantial Likelihood of Success on the Merits._**

There is a substantial likelihood that the Buyer will succeed on the merits of his case.  The evidence reasonably expected to be introduced at trial will clearly establish that the Purchase & Sale Agreement is an enforceable contract.  The contract provides all the essentials of an enforceable contract including: a description of the property; the price to be paid; the names of the buyers and sellers; deposit requirements; title requirements; and, the time and place of closing.  The terms and conditions of the contract negotiated between the Buyer and the Seller was entered into willingly.  As such, a binding contact has been created.  *McCarthy v. Tobin*, 429 Mass. 84, 706 N.E.2d 629 (1999).  In the case at bar, it is clear that the buyer and seller entered into an enforceable contact with the intention of being bound by its terms.

The Seller was obligated to provide "good and clear, record and marketable title." Under Massachusetts law[1], marketable title is defined as title which is good beyond a reasonable doubt.  Reasonable doubt is defined as a doubt such as would cause a prudent man to pause and hesitate before investing his money.  *Mishara v. Albion*, 341 Mass. 652, 171 N.E.2d 478 (1961); *First African Methodist Episcopal Society v. Brown*, 147 Mass. 296, 298, 17 N.E. 549 (1888).  The title must be free from obvious defects

---

[1]    The contract calls for it to be construed under Massachusetts Law.  Exhibit "A", ¶15.

and substantial doubts.  *O'Meara v. Gleason*, 246 Mass. 136, 138, 140 N.E. 426 (1923).

Good and clear record title "rests on the record alone, which must show an indefeasible

unencumbered estate."  *Id.*    If extrinsic evidence beyond the record is required to

support the title, it may be marketable, but it is not good and clear record title.  *Conns v.*

*Carstensen*, 15 Mass. App. 431, 446 N.E.2d 114 (1983).  "When parties use a phrase

which has acquired as much decisional gloss as 'good and clear record title,' and

undertake to deliver such title, they assume an obligation to do just that.  It does not lie

in the mouth of the seller who has agreed to give clear, record title to argue that the

defect which clouds is of little practical consequence."  *Conns*  at 117, 436.  Based on

the opinion of Attorney Elizabeth A. Ginter of Ellis Title Company, and the opinion of

Attorney Stephen Leecock of the First American Title Insurance Company, the Buyer

will be able to establish at trial the inability of the Seller to provide either good and clear

record title or good and clear marketable title, both of which are required by the

Purchase & Sale Agreement.

The Seller has undertaken no efforts to comply with its obligation to obtain and

transfer good and clear record and marketable title.  Under Massachusetts law, the

Seller has an obligation to take affirmative steps reasonably calculated to fulfill a

condition precedent (in this case good and clear, record and marketable title) by action

or expenditure proportionate to the circumstances.  The transaction in question is for

$630,000.00.  The Seller's attorney initially offered to take reasonable steps to satisfy

the Buyer's title examiner and/or title insurers in this case.   The Seller subsequently

reneged on that offer and instead, most provocatively, threatened to market the property

to other parties which the Buyer and Seller both knew were interested in the property.

This type of conduct is indicative of bad faith by the Seller and is in violation of its

affirmative obligation to take reasonable steps to cure the defect in the title.  See *Stabile*

*v. McCarthy*, 336 Mass. 399, 145 N.E.2d 821 (1957); *Sechrest v. Safiol*, 383 Mass. 568,

419 N.E.2d 1384 (1981); *Lynch v. Andrew*, 20 Mass. App. Ct. 623, 626, 481 N.E.2d

1383 (1985).  In the *Sechrest* case the court found circumstances where, even though

there was no explicit obligation on a party to a purchase agreement to bring about the

performance of a condition precedent, the court imposed an obligation for the party to

show that he had, in good faith, used reasonable efforts to bring about performance.  In

the case at bar, the Seller has proposed a course of conduct, which was acceptable to

the Buyer, to attempt to clear title and then abandoned that reasonable course of action

which was proportionate to the circumstances of the transaction.

Under the terms of the contract, the Buyer has clearly demonstrated a substantial

likelihood of success on the merits of his claim.

II.    **The Plaintiff/Buyer will be Irreparably Harmed if Preliminary Relief is not**

**Granted**.

It is well settled law in Massachusetts that real property is unique and that money

damages are often inadequate to redress a deprivation of an interest in land.  Under the

facts and circumstances of the case at bar, it is clear that the equitable remedy of

specific performance together with affirmative injunctive relief requiring the Seller to

provide good and clear, record and marketable title and to preclude the sale of the

property to others is appropriate.  Given the universally recognized unique nature of

land and land transactions, the Buyer would be irreparably harmed in the event that the

preliminary injunctive relief is not granted and the property is sold to others.  *Greenfield*

*Country Estates Tenant Association, Inc. v. Deep*, 423 Mass. 81, 666 N.E.2d 988

(1996).  The Seller's additional request for approval of *lis pendens* does not undercut

the possibility of irreparable harm.   A landowner is not prohibited for alienating or encumbering property subject to a *lis pendens*.   Although alienation may be more difficult, there is nothing to prevent a sale if the landowner can find a  willing buyer.  *In re: Thomas, Inc.*, 75 Br. 387 (D. Mass. 1984).   Preliminary injunctive relief must be granted to avoid loss of the Buyer's unique opportunity to develop the property.

**III.      *The Defendant/Seller will not be Substantially Harmed if the Preliminary Relief is Granted.***

The Defendant/Seller will not be substantially harmed if the preliminary injunctive relief is granted.  The parties entered into an arms length transaction over the purchase of the property for the sum of $630,00.00.  In the event that the injunctive relief sought is granted, the Seller will have to proceed as proposed in their correspondence of March 15th and 16th, 2005.   The proposed course of action is not especially onerous or expensive, particularly in light of the size of the transaction entered into between the parties.  Upon successful completion of the proposed course of action to clear title, the Seller will be paid the sum provided for in the contract and will not be harmed in any way, substantial or otherwise.   In comparison, if preliminary injunctive relief is not granted, the Buyer will lose forever the unique economic opportunity which the purchase of this property presents.   His losses will be difficult to measure and irreparable by way of payment of mere monetary damages.

**IV.      *The Public Interest Would Not be Harmed by Issuance of the Preliminary Relief Requested.***

It is in the public interest to develop residential real estate for housing activities. The parcel which is the subject matter of this litigation potentially would provide housing opportunities for members of the general public to purchase and enjoy.  As such, the

public interest would be served, and in any event, would not be harmed by granting of the preliminary injunctive relief requested.

## **CONCLUSION**

The Plaintiff/Buyer has demonstrated a substantial likelihood of prevailing on the merits of its underlying contractual claim.  The Buyer will suffer irreparable harm in the event that the injunctive relief is not granted and the property is sold to other third parties.  The Defendant/Seller will not be substantially harmed in the event that it is ordered to take the reasonable steps which it contractually obligated itself upon agreeing to the sale of the property which is the subject matter of this litigation.  The public interest, to the extent that it has any interest in this private transaction, would not be harmed by the issuance of preliminary injunctive relief.

> The Plaintiff,
> Charles H. Richard,
> By His Attorney,
>
>        /s/Robert S. Murphy, Jr.
> ROBERT S. MURPHY, JR.
> BACON & WILSON, P.C.
> 33 State Street
> Springfield, MA 01103
> Ph:  (413) 781-0560
> Fax:  (413) 739-7740
> BBO#  550804
> May 3, 2005

### CERTIFICATE OF SERVICE

I, ROBERT S. MURPHY, JR., hereby certify that on May 3, 2005, I caused a copy of the foregoing Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Preliminary Injunction to be served upon all interested parties by mailing a copy thereof, postage prepaid, first class mail to:

J. Mark Dickison, Esquire
Lawson & Weitzen, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA 02210-2414

>  /s/Robert S. Murphy, Jr.
> ROBERT S. MURPHY, JR.