IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHARLES H. RICHARD, | ) | |
|     PLAINTIFF, | ) | |
| v. | ) | |
| | ) | |
| ROCKY COAST, LLC, | ) | No. 05-30097-MAP |
|     DEFENDANT. | ) | |

**DEFENDANT ROCKY COAST, LLC's REPLY TO
PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO DISMISS**

In his opposition to Rocky Coast, LLC's Special Motion to Dismiss, Charles H. Richard (Richard) refers to several cases which, as characterized by Richard, appear to support his position that he is entitled to specific performance. However, scrutiny of these cases shows that the contrary is true.

Richard cites *Dennett v. Norwood Housing Association, Inc.*, 241 Mass 516 (1922), for the general proposition that a seller who agrees to give "a clear and satisfactory title, free from all encumbrances" is obligated to clear title defects prior to conveying the property to the buyer. However, *Dennett* determined that specific language in the contract between the buyer and seller, language which is absent from the agreement between Rocky Coast, LLC and Richard, placed an affirmative obligation upon the seller to clear title if it could. Specifically, the agreement in *Dennett* states that the transfer is "subject to the ability of [seller] to give [buyer] a clear and satisfactory title free from all encumbrances." *Id.* at 521. The court in *Oberg v. Burke*, 345 Mass. 596, 598-99 (1963), citing *Dennett,* states "[w]hen by agreement sellers have undertaken to remove title defects by the time of transfer, they have been obliged to do so in instances where a money payment produced a removal of such encumbrances." In contrast to the agreement in *Dennett*, Rocky Coast, LLC, undertook no affirmative obligation to correct title defects in its agreement with Richard

(which merely states "the Premises will be conveyed by good and sufficient Quitclaim Deed of the SELLER, transferring good and clear, record and marketable title..."). Consequently, the *Dennett* decision does not support Richard's position that he is entitled to specific performance.

Richard also misinterprets *Smith v. MacAlister*, 1 Mass. App. Ct. 22 (1972). In *Smith*, the buyer and seller learned that an abutting property owner's porch encroached upon the seller's land after they entered a purchase and sale agreement. The *Smith* agreement, as in this case, called for the conveyance of "good and clear record and marketable title" and contained no "escape clause." However, unlike Richard, the buyer in *Smith* sued for specific performance of the purchase and sale agreement *with a reduction in the purchase price to account for the interest of the abutter*. While the court stated that specific performance without a price adjustment could be decreed if the abutter stipulated to abandoning her interest in the seller's property, the court did not place any obligation on the seller to seek such a stipulation. The court ultimately determined that, absent such a stipulation, a hearing would be necessary to determine the value of the abutter's interest so that amount could be deducted from the purchase price before specific performance could be decreed. Because Richard never has been willing to accept title to the Wilbraham property as it currently stands, his reliance on *Smith* to support his position that Rocky Coast, LLC can be ordered to clear title is misplaced.

Richard's interpretation of *Freedman v. Walsh*, 331 Mass. 401 (1954) suffers from similarly flawed analysis. In *Freedman*, the buyers sought to compel the sellers to clear certain alleged titled defects and convey the property to them, despite the fact that it had not yet been determined whether title to the property actually suffered from the defects. Consistent with its statement that "[a] decree for specific performance should not be entered if it appears that the defendants cannot transfer

[clear] title," *id.* at 403, the court determined that the title issue had to be resolved before it could rule on the appropriateness of specific performance. The court did not hold that if title defects were found, the sellers would have to correct them.

Contrary to Richard's argument that the purchase and sale agreement provides "circumstantial evidence of the expectations to the parties with regard to clearing title," the language cited by Richard creates no obligation on the part of Rocky Coast, LLC to take such action. On the contrary, the contract language provides that seller "may" use purchase money to clear the title, thus creating an option to do so at seller's discretion. "[T]he proper course is to enforce contracts according to their plain meaning and not to undertake to be wiser than the parties, and therefore ... they will be taken to mean what they say and will be held to their word." *Guerin v. Stacy*, 175 Mass. 595, 597 (1900) (Holmes, C.J.). Since the purchase money clause was created by the conveyancing bar primarily as a means to allow sellers to use closing proceeds to pay off outstanding mortgages, *see Auclair v. Thomas*, 39 Mass.App.Ct. 344, 346 (1995), neither the specific language of the provision nor its intended purpose can be construed in the manner suggested by Richard.

Finally, the cases cited by Richard in support of his contention that sellers who do not act in "good faith" are subject to orders to clear title even when an "escape clause" is included in the agreement do not help his cause. In the context of title disputes, the courts have not allowed sellers to invoke an "escape clause" to avoid an agreement where "the seller has been at fault or has himself caused an impairment in the title." *Oberg, supra,* at 599 citing *Lucier v. Williams*, 323 Mass. 458, 462 (1948) (specific performance not granted where devisee/seller's knowledge of a mortgage on the property arose after entering an agreement with buyer); *Lafond v. Frame*, 327 Mass. 364, 368 (1951) (seller did not act in good faith and could not avoid agreement where she knew of existence

of mortgage at time of agreement and made no attempt to show financial inability to discharge it).

This rule of law was developed to prevent sellers, who decide after entering an agreement that they do not want to sell the property, from using the escape clause to their advantage by creating encumbrances in bad faith. *See Barry v. Nardozzi*, 362 Mass 145, 149 (1972) and cases cited. In contrast, Rocky Coast, LLC, did not create the title defect Richard alleges, nor did Rocky Coast, LLC have reason to know such an objection would be raised where title to the property had been insured by First American Title Insurance Company in 1989 and had been conveyed several times since 1958 when the alleged "missing interest" of Joseph V. Baldwin arose. Moreover, Rocky Coast, LLC did not attempt to avoid the agreement with Richard, but was willing to convey title to the Wilbraham property to him as it currently stands, until it terminated the agreement after Richard refused to accept it. Even where the court finds that a seller has acted in bad faith to avoid an agreement, it only will order specific performance of the title the seller can give. *See Margolis v. Tarutz*, 265 Mass. 540, 544 (1929) ("if because of the fault of the party agreeing to sell a sale cannot be made in accordance with the agreement, the buyer may at his election accept the title which the seller has with a deduction in the purchase price to compensate for the deficiency, and in case of such fault the agreement for a refund of the deposit and a termination thereby of all obligations under the contract does not relieve the seller of his obligation to perform"). Based on the forgoing, Richard would not be entitled to the relief he seeks even if Rocky Coast, LLC had acted in bad faith.

## CONCLUSION

None of the cases cited by Richard in his Opposition to the Special Motion to Dismiss support his assertion that Rocky Coast, LLC can be ordered to clear title to the Wilbraham property and then convey it to him. Rather, read in the proper context, the cases further Rocky Coast, LLC's

position that Richard is not entitled to the relief he seeks as a matter of law. Accordingly, Rocky Coast, LLC respectfully submits that its Special Motion to Dismiss under M.G.L. c. 184, § 15 shouldbe granted.

Dated: May 17, 2005

                                              ROCKY COAST, LLC,
By its attorneys,

                                              /s/ Evan T. Lawson
Evan T. Lawson (BBO# 289280)
J. Mark Dickison (BBO# 629170)
Lawson & Weitzen, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA 02210-1736
Telephone: (617) 439-4990
Facsimile: (617) 439-3987

## CERTIFICATE OF SERVICE

I, Evan T. Lawson, hereby certify that on May 17, 2005, a true copy of the foregoing document was electronically filed with the Court and sent by first class mail to all counsel of record.

                                              /s/ Evan T. Lawson

                                              Evan T. Lawson (BBO# 289280)