```
             UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF MASSACHUSETTS


  CHARLES H. RICHARD       )
          Plaintiff        )
                           )
          v.               )  CIVIL ACTION NO.05-30097-MAP
                           )
  ROCKY COAST, LLC         )
          Defendant        )
```

### MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION AND LIS PENDENS AND DEFENDANT'S MOTION TO DISMISS CLAIM FOR SPECIFIC PERFORMANCE
(Docket Nos. 6, 8, & 10)

June 9, 2005

PONSOR, U.S.D.J.

### I. INTRODUCTION

Plaintiff Charles H. Richard brings this cause of action against defendant Rocky Coast, LLC, seeking an order for specific performance of a purchase and sale agreement for the property located at lots 1 through 5, Patriot Ridge Lane in Wilbraham, Massachusetts.  Additionally, Richard seeks damages for breach of the implied covenant of good faith and fair dealing, as well as for violations of Massachusetts General Laws Chapter 93A.

Plaintiff has filed a Motion for Preliminary Injunction (Docket No. 6) as well as a Motion for Lis Pendens (Docket No. 8). In addition to opposing the plaintiff's motions, the

defendant filed a Special Motion to Dismiss Plaintiff's Claim for Specific Performance (Docket No. 10).

For the reasons stated herein, the court will deny both plaintiff's motions, and allow defendant's motion to dismiss.

## II.  FACTS

On February 17, 2005, Richard and Rocky Coast entered into an agreement for the purchase and sale of premises known as lots 1, 2, 3, 4, and 5 on Patriot Ridge Lane in Wilbraham, Massachusetts (hereinafter called the Wilbraham Properties). The agreement required Rocky Coast, the seller, to convey the property on March 11, 2005 by means of a "good and sufficient Quitclaim Deed" of the seller, "transferring good and clear, record and marketable title" for the sum of $630,000.[1]  (Docket No. 11, Ex. 1.)  Richard, the buyer in the transaction, placed a $25,000 deposit down pursuant to the agreement.

In early March, Richard commissioned a title company to look into the title. The title company notified Richard that

---

[1] The contract requires that the property also be free from all encumbrances with some exceptions not relevant to the current litigation.

it had uncovered a defect, or cloud, in the chain of title to the Wilbraham Properties.  Because of this cloud on the title, First American Title Insurance Co. and Ellis Title Co. notified Richard that they would not insure the title to the Wilbraham Properties.

Between March 15 and 16, 2005, Richard contacted Rocky Coast, informed it of the problem, and asked Rocky Coast to take corrective action.  Initially, Rocky Coast agreed.  However, upon researching the matter on its own, Rocky Coast determined that the title as it existed currently was free from any defect.[2]

Based on this research, on April 5, 2005, Rocky Coast informed Richard via letter that it would not pursue a corrective course of action.  Furthermore, it said, if Richard was unwilling to accept a deed based on its objections regarding the title, Rocky Coast would consider the purchase and sale agreement to be void and would proceed to locate another buyer for the properties.

---

[2] On April 12, 2005, Rocky Coast obtained a letter from the title counsel for the Connecticut Attorneys Title Insurance Co. (CATIC) confirming Rocky Coast's interpretation of the chain of title and confirming (at least in CATIC's mind) that the title was clear and insurable.

On April 6, 2004, after receiving no response to its April 5th letter, Rocky Coast terminated the agreement and offered to return Richard's deposit. On April 20, 2005, Richard filed an action in Hampden Superior Court, which Rocky Coast promptly removed to this court. Richard now claims that he wishes to proceed with the sale as specified in the February 17, 2005 purchase and sale agreement, but only with the contested title defect corrected.[3]

Richard's complaint is in four counts: specific performance, breach of implied covenant of good faith and fair dealing, violation of Massachusetts General Laws Chapter 93A, and suit for injunctive relief.

### III. LEGAL ANALYSIS

The primary issue currently before the court regards this last claim for injunctive relief: the plaintiff has moved for a preliminary injunction against the defendant, enjoining it from selling or otherwise encumbering the Wilbraham Properties. The disposition of the other two motions, plaintiff's request for issuance of a lis pendens

---

[3] Plaintiff's counsel confirmed at oral argument that plaintiff was unwilling to accept the property without correction of the title defect.

and defendant's motion to dismiss, follows from the court's ruling on the motion for preliminary injunction.  Hence, the court will first discuss the plaintiff's motion for preliminary injunction and then discuss together the motion for lis pendens and the defendant's motion to dismiss count one.

A.  <u>Motion for Preliminary Injunction</u>

"A preliminary injunction is a potent weapon that should be used only when necessary to safeguard a litigant's legitimate interests."  <u>Charlesbank Equity Fund II, Ltd. P'ship v. Blinds To Go, Inc.</u>, 370 F.3d 151, 163 (1st Cir. 2004).

When asked to issue a preliminary injunction, the court must weigh four factors: (1) the likelihood of success on the merits, (2) the risk of irreparable harm, (3) the balance of harms between the plaintiff and the defendant, and (4) the public interest.  <u>Matrix Group Ltd., Inc. v. Rawlings Sporting Goods Co., Inc.</u>, 378 F.3d 29, 33 (1st Cir. 2004); <u>Am. Bd. of Psychiatry & Neurology, Inc. v. Johnson-Powell</u>, 129 F.3d 1, 3 (1st Cir. 1997).  Although any "weak link in the chain" may be enough for the court to determine

that equities balance against the issuance of an injunction, see Matrix Group Ltd., 378 F.3d at 34 (stating that the court would not overturn a district court's denial of injunctive relief where there existed a "weak link in the movant's chain"), the most "critical" prong of the evaluation is often considered the likelihood of success on the merits, Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 6 (1st Cir. 1991); Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993) (calling this prong the "sine qua non of that formulation").

Ordinarily, where the buyer of a property is ready, willing and able to perform under the purchase and sale agreement, the buyer can have the agreement specifically enforced.[4]  Ratshesky v. Piscopo, 239 Mass. 180, 186-87 (1921); see Greenfield Country Estates Tenant Ass'n, Inc. v. Deep, 423 Mass. 81, 88 (1996) (stating that it is "well-settled law" in Massachusetts that "real property is unique and that money damages will often be inadequate to redress a deprivation of an interest in land").  However, the court will only order specific enforcement of the agreement "in so

---

[4] The parties do not dispute the fact that Massachusetts law governs the purchase and sale agreement.

far as the vendor is capable of compliance, with a deduction from the purchase price for any deficiency in title." <u>Ratshesky</u>, 239 Mass. at 186.  In other words, the court can only compel the vendor to perform duties that are provided for in the purchase and sale agreement and that the vendor is currently capable of performing.  <u>Id.</u>; <u>Freedman v. Walsh</u>, 331 Mass. 401, 403 (1954).

    A purchase and sale agreement typically commits the seller of a property to convey the land with a specific guarantee of the worthiness of the title.  If the seller is capable of doing this, a court can compel the seller, through an order for specific performance, to abide by the terms of the agreement and to convey the property under the terms of the agreement to the buyer.  Where the seller cannot convey the land with the guarantees of title provided for under the agreement, the most a court can do is order the seller to convey <u>what he has</u> to the buyer -- that is, the title to the land with whatever defects exists -- with a reduction of the purchase price to account for the title defect.  <u>Freedman</u>, 331 Mass. at 403 (stating that, where the defendants had promised to convey the land by a good title

free of encumbrances, "[a] decree for specific performance should not be entered if it appears that the defendants cannot transfer such a title, unless, of course, the plaintiffs are willing to accept as full performance whatever title the defendants can convey . . . with a deduction in the purchase price because of any defect in the title").

The court cannot find that the plaintiff has established a likelihood of success for his claim for specific performance.  In Count One of his complaint, Richard not only demands specific performance of the February 17, 2005 purchase and sale agreement, he also demands that the defendant be ordered to take corrective action on the title.[5]  Massachusetts law is clear however that, at most, the court can order the defendant to convey what he has, that is, title to the Wilbraham Properties with whatever defects in

---

[5] The defendant vigorously disputes whether any cloud exists on the title to the Wilbraham Properties.  It is not necessary, however, to resolve the parties' title dispute.  It is worth noting that, although plaintiff produces two letters from title insurance companies unwilling to insure the title of the Wilbraham Properties as it currently exists, the defendant has produced a letter from a third insurance company who is willing to insure the title.  Thus it is apparent that reasonable minds can differ on the opinion of whether the Wilbraham Properties' title is clouded.

the chain of title exists.  Cases cited by the plaintiff are not to the contrary.

Both Dennett v. Norwood Housing Association, Inc., 241 Mass. 516 (1922), and Parkhurst v. Maynard, 285 Mass. 59 (1933), further support the maxim that specific performance can only order the defendant to convey what he has.  In Parkhurst, the plaintiff specifically demanded whatever title the defendant had in his possession and waived any defects in the title.  285 Mass at 64.  In Dennett, the Supreme Judicial Court stated that the seller had to convey what title he had if the purchaser was satisfied with it.  241 Mass. at 521.  Neither of these cases stands for the proposition that a buyer is entitled to a court order requiring the seller not only to convey the property, but (before conveying it) to remove a contested title defect.

Dennett is further distinguishable by the fact that the purchase and sale contract expressly provided that the seller of the property would undertake "to remove title defects by the time of transfer."  Oberg v. Burke, 345 Mass. 596, 599 (1963) (discussing Dennett).[6]  Here, there is no

---

[6] Both Dennett and Oberg seem to set forth a rule that requires a defendant to remove a defect in title where a "money

such express promise by Rocky Coast in the purchase and sale agreement to take affirmative steps to clear title. Plaintiff's argument that there might be "circumstantial" evidence of the parties' "expectations" is not enough for the court to find that the purchase and sale agreement requires the defendant to take action to clear the title under these circumstances.

As the title currently exists, purportedly under cloud, the defendant can only be compelled to convey what it has. Because the plaintiff has indicated an unwillingness to take title as is from the defendant, an order requiring specific performance is not appropriate. It follows from this that the court cannot find that the plaintiff has shown a likelihood of success on the merits of his claim for

---

payment" would remove the encumbrance. Oberg, 345 Mass. at 599 ("When by agreement sellers have undertaken to remove title defects by the time of transfer, they have been obliged to do so in instances where a money payment produced a removal of such encumbrances."); Dennett, 285 Mass. at 521 ("If the incumbrance could be removed by a money payment, the defendant became bound to make it."). In other words, these cases stand for the proposition that a seller cannot claim that title is not clear because of a mortgage or other similar debt owed by the seller and which the seller need merely pay to un-encumber the title to the property. The rule is not relevant here.

specific performance.[7]  The court must therefore deny plaintiff's motion for preliminary injunction.

B. <u>Plaintiff's Motion for Lis Pendens and Defendant's Motion to Dismiss Plaintiff's Claim for Specific Performance</u>

Massachusetts General Laws Chapter 184, § 15(b) provides that "[u]pon motion of a party, if the subject matter of the action constitutes a claim of a right to real property . . ., a justice of the court in which the action is pending shall make a finding to that effect and endorse the finding upon the memorandum."  Mass. Gen. Laws ch. 184, § 15(c) (2003).  A court "may decline to endorse the memorandum of lis pendens, if the court does order the temporary equitable relief as will preserve the status quo pending further proceedings."  <u>Id.</u>

---

[7] That the plaintiff cannot show a likelihood of success on the merits for his claim for specific performance is a sufficient basis for denying his motion for preliminary injunction.  Nonetheless, the court notes that the plaintiff's other claims also fail to support his motion.  His claims for breach of the implied covenant of good faith and fair dealing and for violations of Chapter 93A both seek monetary damages and are typical claims where a injury may be "completely repaired through money judgment." <u>Almond v. Capital Properties, Inc.</u>, 212 F.3d 20, 25 (1st Cir. 2000); <u>Charlesbank Equity Fund</u>, 370 F.3d at 162 (stating that where the plaintiff ultimately seeks an award of damages, "[s]uch an award will make it whole" and thus the "legal remedy is adequate").  Therefore, the plaintiff cannot meet the irreparable harm prong of the four-part test.  The court would deny the motion for preliminary injunction, if it were offered as to these counts, on this basis.

The purpose of the lis pendens statute is to put all prospective buyers of the property on notice that the property is the subject of a lawsuit.  In re Thomas, Inc., 37 B.R. 387, 392 (D. Mass. 1984); Wolfe v. Gormally, 440 Mass. 699, 703 (2004) (stating that one of the purposes of the lis pendens statute is to protect "prospective buyers by enabling them to obtain 'notice of pending litigation affecting title' through the registry of deeds").  The language of the lis pendens statute "permits judicial endorsement of memoranda of lis pendens in all actions affecting title."  Id.  Consequently, the statute applies to claims "brought on a plaintiff's own behalf to enforce 'some interest in the real estate.'"  Id. at 706.

However, Chapter 184 provides an escape hatch for parties whose property is the subject of a motion for lis pendens.  Section 15(c) allows an aggrieved party to file a special motion to dismiss the claimant's action in order to avoid a memorandum of lis pendens.  Mass. Gen. Laws ch. 184, § 15(c).  The statute states that the special motion to dismiss "shall be granted if the court finds that the action or claim is frivolous because (1) it is devoid of any reasonable factual support; or (2) it is devoid of any arguable basis in law; or (3) the action or claim is subject

to dismissal based on a valid legal defense." Id.

The court finds that the plaintiff's claim for specific performance lacks any legal underpinnings. As discussed above, there is no precedent in Massachusetts for ordering a seller to both clear title and convey the property, absent a specific obligation to do so set forth in the terms of the purchase and sale agreement. As a matter of law, plaintiff lacks any reasonable basis to pursue a claim for specific performance.[8]

Consequently, the court must deny plaintiff's motion for lis pendens and allow defendant's special motion to dismiss.

## IV. CONCLUSION

For the reasons described above, the plaintiff's Motion for Preliminary Injunction (Docket No. 6) is hereby DENIED; the plaintiff's Motion for Lis Pendens (Docket No. 8) is hereby DENIED; and the defendant's Special Motion to Dismiss Plaintiff's Claim for Specific Performance (Docket No. 10) is hereby ALLOWED.

It is So Ordered.

---

[8] Plaintiff's remaining claims, for breach of good faith and fair dealing and for violations of Chapter 93A are not actions that "affect the title to the real property or the use and occupation thereof" as required under chapter 184, § 15 for the issuance of lis pendens. Mass. Gen. Laws ch. 184, § 15. Plaintiff may receive monetary damages under these theories if he ultimately prevails.

/s/ Michael A. Ponsor
**MICHAEL A. PONSOR**
U. S. District Judge