UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-30097-MAP

CHARLES H. RICHARD,

    Plaintiff

v.

ROCKY COAST, LLC.,

    Defendant

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR AWARD OF ATTORNEY'S FEES**

## LEGAL STANDARD

"If the Court allows the Special Motion to Dismiss, it shall award the moving party costs and reasonable attorney's fees, including those incurred for the Special Motion, any motion to dissolve the Memorandum of *Lis Pendens*, and any related discovery." *M.G.L. c. 184, §15(c)*. What constitutes a reasonable fee is a question within the sound discretion of the Court. *Berman v. Linnane*, 434 Mass. 301, 302-303 (2001). "When determining a reasonable attorney's fee, the focus is not on the bill submitted." *Id*. at 303. The amount of the reasonable attorney's fee award is largely within the discretion of the judge who is in the best position to determine how much time was reasonably spent on a case, and the fair value of the attorney's services. *Smith v. Bell Atlantic*, 63 Mass. App. Ct. 702 (2005). The court should look at several factors in determining a fee award, including the nature of the case and the issues presented, the time and effort required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area and the amount of awards in similar cases. *Berman v.*

1

*Linnane*, 434 Mass. 301, 303 (2001). First Circuit courts apply the "lodestar" method to calculate fee awards. The Court determines the number of hours reasonably spent, multiplied by a reasonable rate. *Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.F.3d 331, 337 (1st Cir. 1997). The Court must filter out time spent on unsuccessful claims. *Gay Officer's Action League v. Puerto Rico*, 247 F.3d 288, 298 (1st Cir. 2001). Courts look at billing records to determine the hours reasonably expended, then "subtract from that figure hours which were duplicative, unproductive, excessive or otherwise unnecessary." *Grendel's Den v. Larkin,* 749 F.2d 945, 950 (1st Cir. 1984). A reasonable rate an amount "prevailing in the community for similar work." *Maleira v. Pagan*, 698 F.2d 38, 40 (1st Cir. 1983). See also *Yankee Candle Company, Inc. v. Bridgewater Candle Company, Inc.,* 140 F. Supp. 2d 111, 123 (2001).

## **ARGUMENT**

The Defendant has submitted bills and requested payment for all legal work performed in conjunction with the filing of this matter. If fees are to be awarded, it should be limited to efforts to prepare the Special Motion to Dismiss as provided in M.G.L. c. 184, §15(c). It is undisputed that a motion to dissolve a memorandum of *lis pendens* was unnecessary in this matter, the Plaintiff having sought the *lis pendens* only after notice to the Defendant. It is further undisputed that no discovery had been engaged in in this matter. In light of those facts, it is incumbent upon the Court to determine a reasonable fee to be awarded for the preparation of the Special Motion to Dismiss.

The Defendant contends, without citation, that all work done is compensable under M.G.L. c. 184, §15(c). A common sense analysis of the statute belies this notion. Massachusetts General Laws Chapter 184, §15 was amended in 2002. The result was that the criteria for issuing a memoranda of *lis pendens* became far more restrictive. The amended statute requires the court to decline *lis pendens* relief if it determines that preliminary injunctive relief would provide an adequate remedy. *M.G.L. c. 184, §15(b).* Under the circumstances of this case, and as evidenced by the Defendant's billing records, pleadings and oral argument, the major thrust of the Defendant's legal response was predictably aimed at avoiding the issuance of preliminary injunctive relief as prayed for in Count IV of the Plaintiff's Complaint. Being successful on that argument, the Defendant now seeks to cast its efforts as wholly attributable to the Special Motion to Dismiss. In this case, the entries are reasonably separable. The work involved in preparing the one page Special Motion to Dismiss is compensable under the statute. The remaining efforts were directed at the more pressing matter of the request for injunctive relief, opposition to which is traditionally non-compensable. In a similar case, where the defendant was successful in eliminating claims supporting *lis pendens* relief, a justice of the Massachusetts Superior Court awarded fees in the amount of $1,665.00. *Lindblad v. Holmes*, 2004 WL 3152376 (Mass. Super). See copy filed herewith.

A review of the bills associated with this matter reveal that only four of twenty-one billing entries specifically refer to the Special Motion to Dismiss. Two of the four entries regarding the Motion to Dismiss occurred on May 16th and 17th, 2005 and comprise research, draft and revision to a reply memorandum which the Defendant chose to file in this case to supplement its initial filing. The May 17, 2005 entry by

Attorney Lawson includes both revision time and telephone conference time with the Plaintiff's attorney in order to get consent to file the reply, which consent was granted. To include these charges which were incurred after the filing and argument on the Special Motion to Dismiss would be fundamentally unfair.

Large amounts of time were devoted to research and arguing that a cloud on the title does not exist which was excessive and/or unnecessary. The Court, in reaching its decision on the Plaintiff's Motion for Injunctive Relief, acknowledged that "reasonable minds can differ on the opinion of whether the Wilbraham properties' title is clouded." (Pleading #19, p.8, fn.5). Whether a title defect actually exists is clearly related to counts II and III which remain in this matter, Violation of Good Faith and Fair Dealing and Violation of G.L. c. 93A. Therefore, entries devoted to the title issue should be eliminated (entries for Attorney Kenneth B. Gould on April 21, 2005 and April 22, 2005). Furthermore, many of the entries by Attorney Lawson and Attorney Burhoe appear to be, in large part, duplicative of the efforts of each other or excessive or otherwise unnecessary and should be eliminated.

When reviewing the request for fees, the court is entitled to look to rates charged for similar services by other attorneys in the same area. The case at bar is not extraordinarily complex and therefore local rates, as opposed to metro Boston rates, should apply. The billable rate attributed to Attorney Burhoe is in excess of that which one would expect to be charged for research and drafting work in the Western Massachusetts area. A more appropriate measure of the value of those services would be in the range of $150.00 to $200.00 per hour. Attorney Lawson's billable rate, while possibly appropriate for the large Metro Boston area is in excess of amounts

4

traditionally charged for similar services in this area and should be billed at a rate of between $175.00 and $250.00 per hour.

## CONCLUSION

The Plaintiff respectfully suggests that most, if not all, of the work involved in this matter was directed towards the request for preliminary injunctive relief which is not compensable under G.L.c. 184, §15(c). Furthermore, the hours of work claimed are in excess of that which one would reasonably expect would be involved in filing a Special Motion to Dismiss. Finally, the hourly rates sought for compensation in this matter are in excess of that which similarly experienced attorneys in the area would charge for similar services, and the subject matter is such that local billing rates should apply.

> The Plaintiff,
> Charles Richard,
> By His Attorney,
>
> /s/Robert S. Murphy, Jr.
> ROBERT S. MURPHY, JR., ESQUIRE
> BACON & WILSON, P.C.
> 33 State Street
> Springfield, MA 01103
> Ph: (413) 781-0560
> Fax: (413) 739-7740
> BBO# 550804
> June 30, 2005

## CERTIFICATE OF SERVICE

I, ROBERT S. MURPHY, JR., hereby certify that on June 30, 2005, I caused a copy of the foregoing Plaintiff's Opposition to Defendant's Motion for Award of Attorney's Fees to be served upon all interested parties by mailing a copy thereof, postage prepaid, first class mail to:

Kathryn E. Pieczarka, Esquire
J. Mark Dickison, Esquire
Lawson & Weitzen, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA 02210-2414

> /s/Robert S. Murphy, Jr.
> ROBERT S. MURPHY, JR.

393601

Not Reported in N.E.2d                                                                                                           Page 1
2004 WL 3152376 (Mass.Super.)
**(Cite as: 2004 WL 3152376 (Mass.Super.))**

Only the Westlaw citation is currently available.

Superior Court of Massachusetts.
Jeffrey LINDBLAD
v.
Gregory HOLMES, et al.
**No. BACV200400469.**

Nov. 24, 2004.

MEMORANDUM OF DECISION AND ORDER
ON DEFENDANTS' MOTION TO DISMISS

RICHARD T. MOSES, Justice.

INTRODUCTION

***1** This action was filed by the Plaintiff, Jeffrey A. Lindblad ("Lindblad") against Gregory Holmes and Dorothy K. Douglas. [FN1] The Amended Complaint seeks specific performance of an alleged agreement to sell real estate situated at 95 Cypress Point, Cummaquid, Massachusetts ("the premises"). In addition to Count I, which seeks specific performance, Lindblad seeks damages for breach of contract from Holmes under Count II. Count III asserts damages against Holmes for breach of the implied covenant of good faith. Count IV asserts a violation by Holmes of G.L.c. 93A, § § 2 and 9. Count V seeks declaratory relief as to whether Lindblad is entitled to specific performance and whether or not Lindblad is entitled to damages.

> FN1. Dorothy K. Douglas was added by virtue of an Amended Verified Complaint filed on August 24, 2004.

The Defendant, Holmes, had filed a Motion to Dismiss pursuant to Mass.R.Civ.P. 12(b)(6). [FN2] The Defendants' Motion to Dismiss asserts several grounds in support thereof including claims that the provisions of G.L.c. 259, § 1 bar Plaintiff's claims for specific performance, breach of contract and breach of the implied covenant of good faith and fair dealing. The Motion asserts that Count IV must be dismissed for failure to aver that Holmes was engaged in a trade or business within the meaning of the statute and also for failing to aver that a demand letter was sent pursuant to G.L.c. 93A, § 9 and for failing to aver that there was a failure to respond and make a reasonable tender in settlement offer in response to any such letter.

> FN2. The Motion to Dismiss was served upon Plaintiff's counsel pursuant to Superior Court Rule 9A prior to the filing of the Amended Complaint. The Motion raised the issue of Dorothy Douglas being a necessary party to the action which defect was cured by the Amended Complaint. The Court will consider the Motion as applying to the Amended Complaint with respect to the remaining assertions and will further consider the same as being filed on behalf of both Defendants since the legal issues raised are dispositive of claims asserted against said Defendants.

It should be noted that the Verified Amended Complaint attaches a number of e-mails allegedly exchanged between Lindblad and Holmes. Presently before the Court is a Motion to Dismiss Lis Pendens and Complaint pursuant to M.G.L.c. 184, § 15(c). Such motion which was filed on September 15, 2004 and is filed on behalf of both Defendants, such motion seeks dismissal of the claimant's action and an order dissolving the Memorandum of Lis Pendens previously allowed by the Court.

It should be noted that the issues raised in both motions to dismiss are substantially identical. The provisions of G.L.c. 184, § 15 permits the Court in ruling on a special motion to dismiss to consider verified pleadings and affidavits meeting the requirements of the Massachusetts Rules of Civil Procedure.

BACKGROUND

Lindblad asserts in the Amended Complaint that he has had a personal relationship with Holmes for many years and that Lindblad has been familiar with the premises for many years. The Verified Complaint further asserts that he became aware, through Holmes, that in early 2004 the premises were for sale. The Amended Complaint asserts, and there is no dispute, that Douglas granted Holmes Power of Attorney which included the right to sell the premises as Douglas' attorney in fact. The Complaint asserts that on April 24, 2004, after several offers and counter offers, Holmes made a final written offer to sell the locus for the sum of $530,000.00 which was evidenced by an e-mail dated April 22, 2004. The e-mail is attached to the Complaint and indicates that it is from Gregory Holmes. It identifies the subject as "Cummaquid." The e-mail states in part:

> **\*2** I tried to give you a good deal, if it is a matter of qualifying for a loan. I can take back the 20K as a personal loan from you, I trust you and know you are good for it. I would really like to sell it to you

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

but I have to look out for my mother ... I have to be fair and cannot just give away her money ... $530,000.00 is final. It is still not on the market but will be sometime in May. I hope this does not effect our friendship. Greg

The next e-mail attached to the Complaint is dated May 4, 2004 and is sent from Lindblad to Holmes at 11:14 a.m. and states "Any news on the P & S? The bank said it can be just a draft version of the final document, and does not have to be signed." On May 4, 2004 at 2:47 p.m., Holmes responded by e-mail stating "I have a blank P & S form, you can pick it up tonight and fill it out yourself. I am not sure why you need that to lock in a rate? ? ?. Greg." The next e-mail to Lindblad from Holmes was on May 4, 2004 at 2:56 p.m., some 9 minutes after the prior referenced e-mail. This e-mail states "who are you going to list your house with and for how much? I will not do this deal if you are going to try to do 'for sales by owner.' Greg."

Lindblad asserts that a binding agreement to purchase the premises for $530,000.00 was arrived at in the days following Holmes' e-mail of April 22, 2004 in which he stated "$530,000.00 is final." This fact is denied by Holmes.

A review of the affidavit of Warren Holmes reveals a series of e-mails between Warren and Lindblad. It is apparent that Lindblad was dealing with both Warren and Gregory Holmes simultaneously in connection with the sale of their mother's home. On April 22, 2004 at 7:04 p.m., Lindblad e-mailed Warren Holmes indicating "Hey guys, I need an answer on the $510,000.00. It has been 3 weeks. Interest rates have risen etc. etc. tomorrow at noon I will have to withdraw."

On April 24, 2004 at 12:01 p.m., Lindblad e-mailed Warren Holmes indicating:

Hey Skip, I am really disappointed. If you can facilitate it and save the deal I would be willing to work something out privately with you in return for the favor. Sometimes you need a fresh perspective free from friendship and rivalries and whatever else may be going on.

Warren Holmes responded to Lindblad by e-mail of April 28, 2004 which provided:

we are handling the sale of the house with my mother's best financial interest involved and there is no rivalry involved. As you are aware the house was appraised last fall for $560,000.00. And as far as I know the house has not yet been put on the open market so and (sic) bidding on your part is being made currently without any competitive bidding. Any offer from a friend of the family is highly welcome, but also might be weighed upon the current market as my mother's future financial interest must be factored in to. In the end, having a friend of the family purchase my mother's home would be wonderful. May you have good luck in your biddings.

**\*3** Lindblad responded to Warren Holmes' e-mail with a rather lengthy e-mail acknowledging that he respected Warren Holmes' concerns and expressing his desire to relocate his mother to the premises. He concludes the e-mail with the following statement: "We were only 15-20K apart as of late, but please, let's keep this between us as I guess the deal is off for now. I will confess to being anxious to proceed because of rising rates and I had a(sic) interested party for my house and I apologize. Jeff Lindblad"

As late as April 28, 2004, Lindblad was e-mailing messages to Warren Holmes which included a message which stated in part "absolutely, but Greg had agreed to $530,000.00 last Tuesday and I was at $515,000.00 this Monday. The 560K I believe was not an official appraisal ..." The e-mail ends with the statement "anyway, Skip let's forget it for now. I was eager to get in before summer, but what was supposed to be a great, fun transaction that we all could have fun with has started to turn sour. Thanks for your refreshing perspective and view point, I just wanted you to know that I have made an honest attempt. Jeff"

Reviewing the e-mails submitted by the parties leads to the irrefutable conclusion that after Gregory Holmes indicated in his e-mail of April 22, 2004 that the price of $530,000.00 was final such offer was rejected and Lindblad continued to negotiate with him relating to the price and even resorted to attempting to "... work something out privately with" Warren Holmes if he could facilitate the deal.

It is also undisputed that there was no signed offer to purchase or a memorandum in writing prepared by either party to memorialize any portion of this transaction.

## DISCUSSION
CRITERIA FOR SPECIAL MOTION TO DISMISS
The provisions of G.L.c. 184, § 15(c) allows a party who claims to be aggrieved by the granting of a memorandum of lis pendens to seek dissolution of the same. Such statute also allows such party to file a special motion to dismiss the claimant's action if such party believes that the action or claims supporting the memorandum of lis pendens is frivolous, if the Court

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
2004 WL 3152376 (Mass.Super.)
(Cite as: 2004 WL 3152376 (Mass.Super.))

Page 3

determines the action does not affect the title to the real property or the use and occupation thereof or the buildings thereon, it shall dissolve the memorandum of lis pendens. The special motion to dismiss shall be granted if the Court finds that the action is frivolous because (1) it is devoid of any reasonable factual support; or (2) it is devoid of any arguable basis in law; or (3) the action or claim is subject to dismissal based on a valid legal defense such as the statute of frauds. The statute permits the Court to consider verified pleadings and affidavits in ruling on the motion and if such motion is allowed requires the awarding of costs and attorneys fees.

PLAINTIFF'S CLAIMS FOR BREACH OF CONTRACT AND SPECIFIC PERFORMANCE AS BEING
DEVOID OF REASONABLE FACTUAL SUPPORT, ARGUABLE BASIS AT LAW AND BEING SUBJECT
TO THE LEGAL DEFENSE OF THE STATUTE OF FRAUDS.

***4** The provisions of G.L.c. 259, § 1 provide in part "no action shall be brought: upon a contract for the sale of lands, tenements or hereditaments or any interest in or concerning them ... unless the promise contract or agreement upon which said sale brought or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized."

In the case at bar there is no such memorandum of contract evidencing an agreement of the parties and signed by Holmes as attorney in fact for his mother nor is there such a memorandum or agreement signed by his mother, the Defendant, Douglas. See _Ucello v. Cosentino,_ 354 Mass. 48, 52 (1968), and cases cited. Once a Defendant has pleaded the statute of frauds as a defense the burden shifts to the Plaintiff to prove that the memorandum of oral contract complies with the requirements of the statute. _Michelson v. Sherman,_ 310 Mass. 774, 776 (1942).

The Plaintiff attempts to argue that the e-mail of Gregory Holmes issued on April 22, 2004 stating that $530,000.00 is final somehow satisfies the statute of frauds. Even assuming this e-mail which has the typed name "Greg" contains a signature sufficient to satisfy the statute, the Plaintiff still cannot meet his burden. It is clear from the e-mails produced that Lindblad rejected the $530,000.00 offer to sell and continued to negotiate into April for a better deal. It can be argued that subsequent e-mails evidence that some oral agreement was arrived at, at least in principle, however there is no e-mail issued by either of the Defendants containing any terms of such agreement; rather the e-mail in question precedes the alleged oral agreement.

Lindblad's reliance on the case of _Tzitzon Realty Co. v. Mustonen,_ 352 Mass. 648, 652-53 (1967), is misplaced in that such action involved an actual memorandum of an oral contract that had been arrived at and was prepared and signed by the seller. Also, the signer acknowledged receiving a deposit as a down payment on the land. Thus, it was concluded that the memorandum clearly indicated that the parties had agreed upon the terms of a contract for the sale of the premises. Also, there was no dispute in such action as to the purchase price and the issue raised by the Defendant was the absence in the memorandum of a time for performance. In light of the otherwise sufficient specificity in the memorandum the Court could infer a reasonable time for conveyance of the premises.

Our Courts have held that it is a question of law determining whether or not any memoranda offered satisfies the statute of frauds by containing directly or by implication all of the essential terms of the parties' agreement. _Simon v. Simon,_ 35 Mass.App.Ct. 705, 709 (1994). See also _Schwanbeck v. Federal-Mogul Corp.,_ 412 Mass. 703, 709-10 (1992). The Court concludes as a matter of law that the memoranda offered by the Plaintiff fail to meet the requirements of the statute of frauds.

***5** Even if the Plaintiff's argument were to be accepted that somehow it can be inferred that the memoranda establish an agreement to sell the premises for $530,000.00, a review of such e-mails clearly establishes that such documents do not establish on their face that the parties had agreed upon all the essential terms of the transaction or an intention to be bound by such documents. See _McCarthy v. Tobin,_ 429 Mass. 84, 87 (1999). See also _Germagian v. Berrini,_ 60 Mass.App.Ct. 456, 460 (2004).

Both the e-mails of Lindblad and Holmes indicate that the parties contemplated a purchase and sale agreement being executed and that Lindblad indicated in his e-mail of May 4, 2004 that the bank would be satisfied with "... just a draft version of the final document ..."

It is equally clear that other issues were under discussion at such time including whether or not Lindblad would make the transaction subject to the sale of his home since Holmes indicated by e-mail of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d                                                                                                                        Page 4
2004 WL 3152376 (Mass.Super.)
**(Cite as: 2004 WL 3152376 (Mass.Super.))**

May 2004 that he would not "... do this deal if your going to try to do 'for sales by owner.' " It is thus clear that the parties did not mutually intend that a binding contract exist that arose out of the loose e-mail correspondence hereinbefore referred to.

Lastly, Lindblad attempts to save his claim by asserting a claim of estoppel. A contract for the transfer of land may be specifically enforced notwithstanding failure to comply with the statute of frauds if reasonable reliance on the contract and the continuing consent of the party against whom enforcements is sought has so changed his position that injustice can be avoided only by specific performance. *Barber v. Fox,* 36 Mass.App.Ct. 525, 530 (1994), citing *Restatement (2nd) of Contract,* § 129 (1979), and *Hickey v. Green,* 14 Mass.App.Ct. 671, 673 (1982). In *Barber v.. Fox* the Court noted that the aforesaid rule applied with particular force when the Plaintiff has already provided consideration consisting at least in part of an interest in land. In such action the Plaintiff had irretrievably changed her position by conveying to the defendants certain real estate which was transferred in reliance upon a promise made by the defendant. The cases which have granted relief based upon such estoppel theory have involved situations where there have been substantial changes in position by the Plaintiff mandating equitable relief. *Pino v. Yenof,* 353 Mass. 775 (1968). The facts as alleged in the Complaint clearly do not show that the Plaintiff has been misled to his harm to the extent that it would cause an unjust and unconscientious injury and loss. *Simon v. Simon* at page 712. The alleged reliance upon the parties' agreement by Lindblad amounts to the expenses involved in applying for a mortgage loan. If such minor expenditures amounted to sufficient detrimental reliance in the case at bar it would render the purpose of G.L.c. 259, § 1 a nullity. The Plaintiff's claim for estoppel is therefore without merit. Lastly, Count IV of the Amended Complaint clearly fails to state a claim for which relief can be granted by failing to allege that a demand letter pursuant to G.L.c. 93A, § 9 was sent. A demand letter listing the specific deceptive practices claimed is a prerequisite to suit and as a special element must be alleged and proved. *Entrialgo v. Twin City Dodge, Inc.,* 368 Mass. 812, 813 (1975); *Slaney v. Weatwood Auto, Inc.,* 366 Mass. 688, 704-05 (1975). Count IV must therefore be dismissed.

### ORDER

**\*6** For the foregoing reasons it is *ORDERED* that the Defendants' Motion to Dismiss pursuant to G.L.c. 184, § 15(c) is *ALLOWED* and Counts I, II, III and V and VI are each dismissed, with prejudice and the Defendants are awarded attorneys fees pursuant to G.L.c. 184, § 15 in the amount of $1,665.00. Count IV is dismissed for failure to state a claim for which relief can be granted. In light of the fact that it is unlikely that the Plaintiff will be able to state a viable claim pursuant to G.L.c. 93A, § § 2,9, leave to file an amended claim for relief pursuant to such section is *DENIED*. It is further *ORDERED* that the Memorandum of Lis Pendens previously issued by this Court be and is hereby dissolved.

2004 WL 3152376 (Mass.Super.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.